*415 The Oiiiee Justice delivered the opinion of the court.
An execution of fieri facias de bonis et ierris, in favor of David Ryorson, against Patrick Cassadv, was placed in the hands of George Mushback as sheriff of the county of Sussex, on the twenty-fifth day of October, 1824. For want of goods and chattels, he advertised, under that execution, the real estate of Oassady for sale on the 28th of February, 1825, and then adjourned to the 28th of the succeeding month. A short time before that day, and after the 22d day of February, a venditioni exponas post scire facias, in favor of Isaac V. Coursen against Patrick Oassady and Stephen Roy was delivered to Sheriff Mushback, whereby he was ordered to make sale of the real estate of the defendants levied on and left unsold by a former sheriff. Van eleve Moore, at his decease, by virtue of an execution whereby he had been commanded to raise a certain sum of damages and costs of the real estate whereof they were seized on the first day of December, 1823. This writ of vend, exponas was tested of February, returnable to May term, 1825. No advertisement was made under it by Sheriff Mushback. On the 28th of March, he made sale of the real estate of Oassady, and applied the moneys arising therefrom in satisfaction of the demands of Ooursen. In February term, 3827, he was amerced, at the instance of David Ryerson, in the amount *due on the execution in his favor; the [*351 sale being more than sufficient to discharge it, if first used for that purpose.
From this statement of the facts, it is manifest that sheriff Mushback had no authority to sell, on the 28th of March, the real estate of Oassady in order to raise money to satisfy the demand of Ooursen. The writ had been but a month in his hands; he had made no advertisement under it; he could therefore make no sale to satisfy it. Rev. Laws 432, sec. 9, 10, 12, 13. In The State against McDonald, Denn. 357, Chief Justice Kirkpatrick, delivering the opinion of the court, said, “ the sale of the estate, the proceeds of *416 which are said to have been detained by the sheriff, was made on the 17th of January, 1792, only twenty-one days after the execution of Henry came into his hands. The sale therefore could not have been made upon this execution ; the law did not admit of it. It required a public advertisement of two months at least, to justify such sale.”
In the next place, it is clear that a sheriff having authority to sell and raise money under one execution, and no such authority under another, is bound to apply the moneys arising from such sale to the former execution, and according to his authority. It is moreover clear, that the sheriff could not of his own will, and by resolving to make sale under the Ooursen execution, authorize himself to do so, or to apply the money to the discharge of it. It is said he offered the premises for sale under both executions, mentioning both in his conditions of sale. But if so, he gained thereby no increase of power nor extension of authority. He could not assume on himself, or on his sale, existing liens, and undertake to discharge them. A sheriff must apply the money arising from a sale to the execution under which he sells. He cannot apply it to the discharge of previous liens. He has no authority to make such a stipulation in his terms of sale. The notice of the Ooursen execution was a warning to purchasers ; who take on themselves the hazard of the sufficiency of the authority of the sheriff and the regularity of his procedure. Whether the judgment in favor of Ooursen, was liable to be defeated by a sale under the subsequent execution, or would, notwithstanding, remain a lien on the premises, nothing which could then be done by the sheriff could in any wise enlarge, sustain or abridge .its operation. Ho notice or reservation by the sheriff could increase or diminish its strength. The *352] *purchaser as well as the sheriff must act at his peril. The position laid down by the counsel of the sheriff, that if he sells under a second execution, with a reservation of the rights of the first, the first will be entitled to the *417 money, can be true only in a very qualified manner, and not in its broad terms, nor as a general rule, especially in relation to real estate. The cases cited, Hutchinson v. Johnson,1 T. R. 729, and Levy v. Wallis, 4 Dal. 167, do not maintain it, even as to personal estate. If by reserving the rights of the first execution at the sale, be meant merely, that the lien should not thereby be prejudiced, the reservation might be a matter of prudent caution and a convenient warning to purchasers; but if it be meant that the sheriff might thereby entitle himself to apply the money raised to pay the first excution, although he had not advertised nnder it, such power in the sheriff is wholly denied.
If then the sheriff had not authority, and could not, of his own volition, assume to himself authority, on the 28th of March, to sell for the purpose of paying the execution of Ooursen, let us now examine what was stated by the counsel of the plaintiff in certiorari, to be the real question in this case, whether a sheriff may not sell under a junior execution, with the consent of all interested, that the money shall be applied to the payment of the prior execution.
I feel disposed to entertain very strong doubts whether the sheriff can do so, even with the consent of all interested. In such departure from the regular course of proceeding, I anticipate many difficulties and risks aud much litigation. The deed from the sheriff to the purchaser, it if recites the execution of Ooursen, must be somewhat anomalous, either by silence as to the advertisement, or in its averments. But the question need not bo resolved, unless the fact, the consent of all interested, is first ascertained. So far from the consent of all, the case shews, in my apprehension, the consent of none. If the consent of those interested is to sustain the measure, this consent, it will be I presume readily conceded, should be in plain, express and unequivocal terms. Is such consent to be found ? Did the sheriff act on such consent ? Erom the evidence, it appears the sheriff set up the property for sale under both executions, *418 or in other words, announced in the conditions his intention to sell by virtue of both, without consulting any person or obtaining therefor the approbation of any one. There is not the slightest evidence that the consent of the defendant, *353] *Patrick Cassady, was asked or obtained, or that he was present at the sale. Coursen did not attend; John Rorback, to whom his execution had been previously assigned, made no consent, unless by his presence, without forbidding the sale, or by his making a. bid. Did David Ryerson consent? Certainly not, previously to the opening of the vendue. For it is testified that, after reading the conditions, at the top of which both executions were stated, he said the course of selling was different from what he expected. He supposed the property would have been sold on his execution alone. He was not thereupon requested by the sheriff to give his assent to the manner of sale. The vendue proceeded. He offered a bid. He afterwards retracted it. Pie appears to have been in a state of doubt and uncertainty. The sale, being for a time suspended, he requested a person present, if the sale should proceed before his return, to bid for him over the amount of the elder execution so as to bring the property into his hands. The vendue being resumed, he bid again, and several times, and was perhaps the last bidder save the purchaser. In all these things, there is no acquiesence, much less consent on the part of David Ryerson, nor is any thing to be seen inconsistent with a determination to stand on and claim his legal rights. His omission to forbid the sale as the sheriff thought fit to make it, cannot operate to his prejudice. He was not called to interfere. He was, most probably, ignorant whether the proceeding of the sheriff was regular or otherwise. The sheriff and the purchaser acted on their own responsibility and at their peril. Nor do I see any ground for the inference of the plaintiff’s counsel, that a word from Ryerson would have caused the sale to be made in a different way. For the sheriff had resolved on his mode of sale, *419 without, consulting Ryerson, and indicated no disposition to depart from it when he expressed his surprise. There is a document among the papers submitted to us, not particularly adverted to by the counsel on the argument, which serves very intelligibly to shew the ground on which the sheriff acted. I refer to the statement of the sale which he filed in the clerk’s office agreeably to the directions of the statute. He sets forth the sale of the land, and the appropriation of the money, and says “ the money raised as above was applied as above mentioned by me, because the levy upon which I sold contained in tho execution in favor of J. V. Ooursen was made by sheriff *Moore on the 22d of December, [*354 1823, and was therefore older than that of David Ryerson’s.” He makes no illusion to consent of the persons interested ; but sustains his application of the money singly on the fact .that tho execution of Ooursen was the eldest.
T am of opinion, therefore, that the sheriff mistook the proper application of the proceeds of the sale; having neither the authority of the law nor the assent of the parties; that the money ought to have been paid to David Ryerson ; and that the amercement was rightly ordered.
Judgment affirmed.